**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

CLAYTON WEBSTER,                          :

               Petitioner,          :          Civil Action No. 10-5640 (DRD)

            v.                          :          **O P I N I O N**

MICHELLE R. RICCI et al.,                  :

             Respondents.        :

_____

**Dickinson R. Debevoise**, District Judge:

      Petitioner Clayton Webster ("Petitioner") filed the instant Petition ("Petition"), seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(a), and challenging his judgment of conviction rendered by the Superior Court of New Jersey.  See Docket Entry No. 1.  No notice was issued to Petitioner advising him of his rights under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), since the Petition, on its face, indicated that it was untimely and, in addition, it appeared unexhausted.  See Docket Entry No. 2.  However, out of abundance of caution, this Court found sua sponte dismissal of the Petition on the grounds of untimeliness unwarranted, and directed Respondents to produce a limited answer as to the timeliness and exhaustion aspects.  See id. Respondents duly complied, see Docket Entries Nos. 5-10, taking the position that the Petition was subject to dismissal for failure to meet the statute of limitations requirements and, in addition, for failure to duly exhaust some of Petitioner's claims in the state courts.  See id.

Petitioner traversed, <u>see</u> Docket Entry No. 13, asserting that his submission is timely or should be entitled to equitable tolling; his traverse did not address the issue of exhaustion.  <u>See id.</u>

  For the reasons detailed below, the Court agrees with the outcome of Respondents' analysis (but not with the finer aspects of their position) and finds that the Petition is: (a) subject to "a" measure applicable to habeas submissions that are partially unexhausted; and, in addition (b) subject to prejudicial dismissal, as untimely.  The Court, thus, will dismiss the Petition and will decline to issue a certificate of appealability.  <u>See</u> 28 U.S.C. §§ 2253(c), 2254(a), (b), (c). Taking notice of the parties' apparent, although understandable, confusion as to the complexities of the issues involved, the Court finds it warranted to provide them with detailed analyses of the subtle aspects of habeas law raised by the Petition at bar.

## I.  BACKGROUND

  The track of Petitioner's state proceedings underlying his instant challenges is extensive. However, short of one aspect, the key points of this procedural history appear undisputed.

  Petitioner was tried to a jury in the Superior Court of New Jersey, Law   Division, Middlesex County, and was convicted of two offenses.[1]  On the basis of these convictions, Petitioner was sentenced, on September 18, 1995, to life imprisonment, with thirty years of parole ineligibility.  On October 6, 1995, he filed a notice of appeal with the Superior Court of New Jersey, Appellate Division, which affirmed his conviction on July 22, 1999.  The New Jersey Supreme Court denied him certification as to his direct appellate challenges; that denial occurred on February 3, 2000.  <u>See</u> <u>State v. Webster</u>, 163 N.J. 75 (2000).

---

  [1]  Specifically, Petitioner was convicted of first-degree murder and second-degree possession of a weapon for an unlawful purpose.  <u>See</u> <u>State v. Webster</u>, 167 N.J. 254 (2006).

On May 8, 2000, Petitioner filed a counseled application for post-conviction relief

("PCR").[2]  See Docket Entry No. 1, at 9; Docket Entry No. 6, at 2.  That PCR application was

dismissed by Petitioner's trial judge on March 20, 2001, on the ground that Petitioner's PCR

counsel failed to timely file a brief in support of the PCR application.  See Docket Entry No. 1, at

9; Docket Entry No. 13, at 3 and 19 (replicating the state court's decision).

The parties differ in their positions as to the next procedural step.  Specifically,

Respondents maintain that Petitioner made PCR application by filing another counseled PCR

submission; there is no dispute that *this* submission was filed on May 22, 2002.  See Docket

Entry No. 6, at 3.  The state court seemed to agree with Respondents' version of events, since the

state court too stated that Petitioner's second PCR application was filed on May 22, 2002.  See

State v. Wester, 2009 WL 1635201, at *1 (N.J. Super. Ct. App. Div. June 12, 2009).

However, Petitioner maintains that: (a) his second PCR application was initially filed pro

se, on June 27, 2001; and, so, (b) the May 22, 2002, filing represented merely an amended

counseled filing of the same.  See Docket Entry No. 13, at 3.[3]

---

[2]  Petitioner maintains that he attempted to submit a pro se PCR application on February
18, 2000, but that application never reached state courts.  Therefore, Petitioner does not dispute
that his first PCR application actually received by the state courts was the one filed on March 8,
2000.  See Docket Entry No. 1, at 9.

[3]  No evidence of such second PCR application filed pro se on June 27, 2001, was
provided to this Court by either side, since Respondents' answer is silent as to such second PCR
application filed pro se, and Petitioner merely offered this Court his mailing slips, showing that
he sent "something" to the state court on June 27, 2001, see Docket Entry No. 13, at 16, and that
he also sent "something," on the same date, to the Prosecutor's Office.  See id. at 17.  Had the
issue of *what* Petitioner sent to the state court and the Prosecutor's Office been decisive to the
case at bar, this Court would have held evidentiary hearing to that effect.  However, since this
matter can be conclusively resolved even if Petitioner's version of events is presumed true, no
such hearing is needed.

3

The parties agree as to the remainder of Petitioner's procedural history in the state courts. Indeed, it appears undisputed that Petitioner's second PCR application was dismissed by the Law Division on October 20, 2003, and, on May 16, 2005, the Appellate Division affirmed that dismissal.  Petitioner sought certification from the Supreme Court of New Jersey, which: (a) granted him certification as to a single issue, namely, whether Petitioner's counsel representing him for the purposes of his second PCR application violated state law by refusing to raise the challenges which Petitioner desired to litigate but which were perceived by Petitioner's PCR counsel as factually unwarranted and/or legally meritless; but (b) denied Petitioner certification as to all other aspects of his challenges raised in his application seeking certification.  Addressing the sole certified issue, the New Jersey Supreme Court reversed the Appellate Division decision on July 12, 2006, and remanded Petitioner's second PCR application to the trial court for consideration of those challenges which Petitioner wished to raise but which his PCR counsel deemed factually unwarranted and/or legally meritless.  See State v. Wester, 187 N.J. 254 (2006). Pursuant to the workings of that New Jersey Supreme Court remand, Petitioner was allowed to file, with the Law Division, his amended (effectively, third) PCR application containing all those challenges Petitioner's PCR counsel deemed factually unwarranted and/or legally meritless; that application was also dismissed by the Law Division and, on June 12, 2009, the Appellate Division affirmed that denial.  See State v. Webster, 2009 WL 1635201.  Petitioner, again, sought certification from the New Jersey Supreme Court, which – this time – denied him certification on October 8, 2009.  See State v. Wester, 200 N.J. 475 (2009).

On September 27, 2010, Petitioner executed his habeas application at bar, and prepared the cover letter accompanying it; the letter was dated September 30, 2010.  See Docket Entry No.

4

1, at 5; Docket Entry No. 1-3.[4]   Hence, it appears that Petitioner handed his Petition to his prison officials for mailing to this Court on September 30, 2010, or at a later date.  See Docket Entry No. 1-3.[5]

In his instant Petition, Petitioner raised the following challenges:

GROUND ONE:        The state court's ruling that trial counsel's failure to object to trial court's erroneous instruction on passion-provocation manslaughter and imperfect self-defense was not ineffective assistance of counsel, was contrary to clearly federal law an unreasonable application of federal law therefore, the writ shall issue

GROUND TWO:        The state court's ruling that trial counsel's conceding before the jury that his client was guilty of manslaughter and not murder, thereby relieving the State of its burden of proving each and every element of the crime charged was not ineffective assistance of counsel, was contrary to clearly federal law an unreasonable application of federal law therefore, the writ shall issue

GROUND THREE:      The State court's ruling that trial counsel's failure to propose a defense of diminished capacity was not ineffective assistance of counsel was contrary to clearly

---

[4]  The Clerk received the Petition and cover letter almost one month later, i.e., on October 29, 2010.  See Docket Entry No. 1.

[5]  Respondents take the position that the Petition must be deemed filed on the date it was received by the Clerk.  That is incorrect.  Pursuant to the workings of the "prisoner's mail-box" rule, the Petition was "filed" on the day when Petitioner handed his Petition to the prison officials for mailing to this Court.  See Burns v. Morton, 134 F.3d 109, 113 (3d Cir 1998) ("[A] pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court").  Therefore, had the date of such filing been crucial for resolution of Petitioner's claims, the Court would have to hold an evidentiary hearing to establish that date.  However, here, the Court finds it warranted to presume – without making a factual finding to that effect – that the Petition was filed on the date of Petitioner's execution of his cover letter.  Accord Henderson v. Frank, 155 F.3d 159 (3d Cir. 1998) (holding that, in the absence of any documentary proof of the date a § 2254 petition was filed, such as a mail log, the court should deem the petition filed as of the date written on the petition's certification page as the more plausible filing date).

federal law an unreasonable application of federal law therefore, the writ shall issue

GROUND FOUR:  The state court's ruling that trial counsel's failure raise the claim that the interrogating officers failed to scrupulously honor Petitioner's right to remain silent when Petitioner had told the investigating officers that he did not wish to speak was not ineffective assistance of counsel was contrary to clearly federal law an unreasonable application of federal law therefore, the writ shall issue

GROUND FIVE:  The state' court's ruling that trial counsel's failure to request adequate instruction on serious bodily injury as charged in the indictment was not ineffective assistance of counsel was contrary to clearly federal law an unreasonable application of federal law therefore, the writ shall issue

GROUND SIX:  The State court's ruling that trial counsel's failure to request the trial court to voir dire Hispanic jurors as to their possible bias against Petitioner who is African American and was on trial for killing an Hispanic was not ineffective assistance of counsel and contrary to clearly federal law an unreasonable application of federal law therefore, the writ shall issue

GROUND SEVEN:  The state court's ruling that trial counsel's failure to challenge the composite array of the grand jury, since the grand jury was not made up with a fair composition of the county was not ineffective assistance of counsel and was contrary to clearly federal law an unreasonable application of federal law therefore, the writ shall issue

GROUND EIGHT:  The State court's ruling that trial counsel's failure to raise the safeguard Petitioner's constitutional right to be tried by a jury of his peers, and allowing petitioner who is an African American to be tried by jurors made up of Caucasians only was not ineffective assistance of counsel and contrary to clearly federal law an unreasonable application of federal law therefore, the writ shall issue

GROUND NINE:  The state court's ruling that trial counsel's failure to adequately prepare Petitioner for testimony for trial was not

6

|  | ineffective assistance of counsel, was contrary to clearly federal law an unreasonable application of federal law therefore, the writ shall issue |
|---|---|
| GROUND TEN: | The state court's ruling that appellate counsel's failure to raise any of the issues mounted herein on direct appeal, and to adequately consult with Petitioner prior to submitting Petitioner's brief  was not ineffective assistance of counsel and contrary to clearly federal law an unreasonable application of federal law therefore, the writ shall issue |

Docket Entry No. 1-2, at 2-27 (capitalization removed; sentence structure and lack of punctuation in original).[6]

Petitioner's second PCR application (the one, which produced the remand by the Supreme Court of New Jersey) raised the following challenges raised with assistance of Petitioner's PCR counsel:

(1)     trial counsel failed to <u>voir dire</u> Hispanic jurors as to their possible bias against defendant;

(2)     trial counsel failed to object to the court's erroneous instructions on imperfect self-defense;

(3)     trial counsel failed to object to the trial court's erroneous instruction on passion-provocation manslaughter;

(4)     trial counsel failed to request adequate instruction on serious bodily injury;

(5)     trial counsel erroneously conceded before the jury that defendant was guilty of manslaughter and not murder, thereby relieving the State of its burden of proof;

(6)     trial counsel failed to argue that the police did not honor defendant's right to remain silent;

(7)     trial counsel failed to challenge the composit[e] array of the Grand Jury;

(8)     trial counsel failed to protect defendant's constitutional right to be tried by a jury of his peers;

---

[6] Each of Petitioner's grounds raised a host of sub-grounds, each of which had to be presented as a ground in its own right, since each of these sub-grounds asserted its own unique factual predicate.  <u>See</u> Docket Entry No. 1-2, at 2-27.  However, this shortcoming of the Petition does not have any bearing on the Court's analysis needed for disposition of this matter.

(9)     trial counsel failed to adequately prepare defendant for testimony during
        trial.

State v. Webster, 187 N.J. 254, 255-56 (2006).

Petitioner's amended PCR challenges (raised, after the aforesaid remand, by means of a

new PCR petition which, effectively, operated as Petitioner's third PCR application) asserted:

Point I      A trial attorney's strategic miscalculations which are of such
             magnitude as to thwart the fundamental guarantee of a fair trial
             may sustain a claim of ineffective assistance of counsel.
Point II     The trial attorney's presentment of an imperfect self-defense claim
             was negated by his acquiescence to an instruction on
             passion/provocation manslaughter.
Point III    The defendant was not adequately prepared by his trial attorney to
             address the two conflicting theories of his defense.
Point IV     An evidentiary hearing is required to determine why the
             defendant's trial attorney did not remove a Hispanic juror who had
             a relationship with a federal law enforcement agent.
Point V      The trial court did not adequately instruct the jury it could reject
             the inference that the use of a handgun was evidence of the
             defendant's intent to kill.
Point VI     This court should remand for a more thorough review by PCR
             counsel of the defendant's argument regarding the grand jury's
             composition.

State v. Webster, 2009 WL 1635201, at *1 (capitalization removed).

## II.  DISCUSSION

## A.  Exhaustion Aspect

### 1.     The Parties' Positions

Maintaining that the Petition is subject to dismissal on the failure-to-exhaust grounds,

Respondents state as follows:

It is clear that a habeas petition that includes unexhausted as well as exhausted
claims, i.e., a mixed petition, must be dismissed without prejudice. [See] Rose v.
Lundy, 455 U.S. 509, 522 (1982).  . . .  Here, [P]etitioner has failed to exhaust his
state remedies.  . . .  All of [P]etitioner's claims relate to ineffective assistance of

8

counsel claims arising out of petitioner's petition for post[-]conviction relief. Accordingly, the remand hearing at the trial court, the appeal to the Appellate Division and the appeal to the Supreme Court are the operative decisions that dictate whether petitioner's claims have been exhausted.  Not all of the claims that petitioner raises in this action were raised before the Appellate Division and Supreme Court. . . .  Rather than considering these claims and ruling on the merits, the Supreme Court [of New Jersey] reversed the decision of the Appellate Division and remanded to the trial court for a hearing.  . . .  However, not all the claims that [P]etitioner makes in the instant [P]etition were presented to the trial court, the Appellate Division and the [New Jersey] Supreme Court.  For example, Ground Six of [P]etition alleges that trial counsel's failure to request the trial court to voir dire Hispanic jurors as to their possible bias against petitioner who is African American and was on trial for killing an Hispanic was ineffective assistance of counsel.  Yet, on [P]etition to the Supreme Court, [P]etition argued that trial counsel did not remove a Hispanic Juror who had a relationship with a federal law enforcement agent.  Therefore, the Supreme Court did not consider the issue raised in Ground Six and the claim is not exhausted.  In addition, in Ground Eight, wherein [P]etitioner claimed that trial counsel's failure to raise the safeguard [P]etitioner's constitutional right to be tried by a jury of his peers, and allowing [P]etitioner who was an African American to be tried by jurors made up of Caucasians only was ineffective assistance of counsel, was not raised and decided by the Supreme Court and is therefore not exhausted.  Accordingly, at least two of defendant's claims are not exhausted in state court.  For these reasons, to the extent that [P]etitioner raised factual claims of ineffective assistance of counsel that were not presented in state court, he has not adequately shown that he has exhausted state remedies.

Docket Entry No. 5, at 16-23.

As noted supra, Petitioner's traverse is silent as to the exhaustion issue.  See Docket Entry No. 13.

### 2.    The Petition Is Subject to "A" Measure Applicable to "Mixed" Petitions

Respondents' initial statements as to exhaustion are entirely correct.  See Docket Entry No. 6, at 12.  While the failure to exhaust state remedies does not deprive a federal court of jurisdiction to consider the merits of a habeas corpus application, it is indeed a statutory requirement of every § 2254 petition that federal constitutional claims be addressed on the merits

9

in State court and fully exhausted prior to the filing of a habeas petition in federal court.  See, e.g., Granberry v. Greer, 481 U.S. 129-31 (1987); Rose v. Lundy, 455 U.S. 509, 516-18 (1982); Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).

Respondents are also correct in their observation that the exhaustion requirement means that each claim presented for federal habeas review must presented to each level of the state courts, and both the legal theory and factual predicate of each claim presented for federal habeas review must be materially the same as those of the corresponding claim presented to all levels of state court.[7]  See Picard v. Connor, 404 U.S. 270, 275-77 (1971); accord Docket Entry No. 6, at 13-14.

However, other aspects of Respondents' position are less reflective of law or inapposite to the proceedings at bar.  For instance, while Respondents correctly note that there is a narrow futility exception to the exhaustion requirement,[8] see Docket Entry No. 6, at 15, that issue is

---

[7]  The rationale of the "substantial equivalent" requirement is self-evident in light of the standard of review applicable to federal habeas actions: habeas relief focuses on whether the state court's adjudication of the petitioner claim "resulted . . . or involved an unreasonable application of . . . Supreme Court precedent," 28 U.S.C. § 2254(d), and – if the legal theory or factual predicate of each claim presented to the state courts differed from those presented for federal habeas review, the federal court cannot just "guess" how the state courts would have adjudicated the particular claim.

[8]  In general, the question of whether the circumstances excusing exhaustion "exist calls for a factual appraisal by the court in each special situation."  Granberry, 481 U.S. at 136.  These exceptions might occur, for instance, in cases where enforcement of the exhaustion appears futile, and a procedural dismissal would serve no interest, state or federal, since the enforcement of the exhaustion requirement would burden the states with unnecessary litigation or would constitute nothing but a hollow exercise in etiquette.  See Little Light v. Crist, 649 F.2d 682, 684-85 (9th Cir. 1981); Nash v. Israel, 533 F. Supp. 1378, 1380 (E.D. Wis. 1982); Emmett v. Ricketts, 397 F. Supp. 1025, 1047 (N.D. Ga. 1975).  For instance, lack of exhaustion in the state courts might be excused if the highest state court consistently or recently has rejected claims identical to the petitioner's, or all of the intermediate appellate courts in the state have rejected

(continued...)

inapposite to the case at bar: since Petitioner never asserted futility.  Moreover, Respondents

seem to equate the futility exception with that of lack of state court means to seek review.

However, the latter ensues from the statutory language of 28 U.S.C. § 2254(b)(1) (providing that

a state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the

remedies available in the courts of the State," unless "there is an absence of available State

corrective process"), see Rose v. Lundy, 455 U.S. at 515; Toulson v. Beyer, 987 F.2d at 987;

Duarte v. Hershberger, 947 F. Supp. 146 (D.N.J. 1996), and refers to *the law of the case*

governing a particular litigant's state court actions.  In other words, where – as here – state

procedures remain available, even if only theoretically, the issue of procedural default is not

implicated at all.[9]

---

claims identical to the petitioner's, and the highest court has let those decisions stand.  See, e.g.,
Lynce v. Mathis, 519 U.S. 433, 436 n.4 (1997); Fisher v. Texas, 169 F.3d 295, 303 (5th Cir.
1999); Allen v. Att'y Gen., 80 F.3d 569, 572-73 (1st Cir. 1996); Cunningham v. DeRobertis, 719
F.2d 892, 894-95 (7th Cir. 1983).

[9]  A petition containing claims which are unexhausted, but conclusively ruled
procedurally deficient by the state courts, will not be dismissed as unexhausted.  See Toulson,
987 F.2d at 987; accord Coleman v. Thompson, 501 U.S. 722, 730-32 & n.1 (1991); Harris v.
Reed, 489 U.S. 255 (1989).  That being said, while the doctrine of procedural default excuses
exhaustion, it is a double-edged sword, i.e., it was not created as an incentive for state litigants to
circumvent state court review and, hence, does not envision a "reward" to those litigants who
procedurally default their claims.  When a petitioner's failure to comply with a state procedural
rule has prevented the state courts from reaching the merits of his federal claims, federal habeas
review of those claims is ordinarily barred unless the habeas petitioner can show 'cause' for the
default and 'prejudice' attributable thereto, or demonstrate that failure to consider the federal
claim will result in a fundamental miscarriage of justice."  Harris, 489 U.S. at 262; accord
Coleman, 501 U.S. at 750; Cabrera v. Barbo, 175 F.3d 307, 312-14 (3d Cir. 1999); Sistrunk v.
Vaughn, 96 F.3d 666, 673 (3d Cir. 1996); see also Haley, 541 U.S. at 392-93; Murray v. Carrier,
477 U.S. 478, 485(1986); Hubbard, 378 F.3d at 339; McCandless v. Vaughn, 172 F.3d 255, 260
(3d Cir. 1999).

11

Another point of Respondents' confusion relates to the treatment of "mixed" petitions. Respondents seem to be under the impression that, if presented with a petition consisting of both exhausted and unexhausted claims, the federal court sitting in habeas review must necessarily dismiss the petition.  See Docket Entry No. 6, at 15.  This is not entirely correct.

> Faced with [a] "mixed" petition, the District Court ha[s] four options: [(1)] dismiss the petition without prejudice under Rose [v. Lundy, 455 U.S. 509, but only if such dismissal would not mean that the petitioner's filed-after-state-exhaustion amended petition would be en route for dismissal as untimely, see Urcinoli v. Cathel, 546 F. 3d 269 (3d Cir. 2008)], [(2)] "stay and abey" under Rhines [v. Weber, 544 U.S. 269 (2005), if the petitioner's unexhausted challenges present colorable claims], [(3)] allow [the petitioner] to delete his unexhausted claims, see Rhines, 544 U.S. at 278, or, [(4)] if all of his [unexhausted] claims are [facially] meritless, deny the [entirety of the] petition under § 2254(b)(2) (allowing denial of a petition on the merits "notwithstanding the failure of the applicant to exhaust . . .").

Mahoney v. Bostel, 2010 U.S. App. LEXIS 3916, at *5-6 (3d Cir. N.J. Feb. 24, 2010) (footnote omitted).

Since Respondents maintain that the Petition at bar is not suited for dismissal under § 2254(b)(2), see Docket Entry No. 6, at 21, and Petitioner, as of now, is already fighting to prove timeliness of his habeas submission, the only exhaustion-wise options applicable in this case appear to be: (a) allowing Petitioner to delete his unexhausted claims; or (b) staying this action while Petitioner attempts to exhaust his unexhausted challenges in the state courts.[10]  See id.

---

[10]  Respondents also maintain that those Petitioner's counseled challenges that were raised in his second PCR application should be deemed unexhausted unless they were replicated in his third PCR application.  The validity of Respondents position is questionable at best, since the Supreme Court of New Jersey (a) expressly refused to grant certification to Petitioner with regard to his challenges based on the Appellate Division's affirmance of the Law Division decision to dismiss Petitioner's counseled PCR claims raised in Petitioner's second PCR application; (b) granted certification expressly with regard to the narrow issue of Petitioner's PCR counsel's obligation to raise in a PCR application *all* issues Petitioner desired to litigate,

(continued...)

Therefore, this Court agrees with Respondents' position that the Petition should be subject to "a" measure applicable to "mixed" habeas submissions, but disagrees with Respondents' assertion that such measure should be a dismissal, since even a dismissal without prejudice could be fatal to a habeas petition.  See Urcinoli v. Cathel, 546 F. 3d 269.

**B.  Timeliness Aspect**

As the foregoing demonstrates, the exhaustion aspect of Petitioner's challenges offers an intricate intellectual exercise but it does not allow for a conclusive disposition of the Petition at

---

[10](...continued)
including those issues which the counsel deemed factually unwarranted and/or legally meritless; (c) remanded Petitioner's PCR submission to the trial court for considerations of the PCR challenges rejected by Petitioner's PCR counsel as factually unwarranted and/or legally meritless; and (d) at no point stated that it abstained from review of Petitioner's counseled challenges raised in his second PCR application.  See Docket Entry No. 6, at 21.  Granted that a state court may render an "adjudication on the merits" of a federal claim by rejecting the claim *without any discussion whatsoever*, see  Harrington v. Richter, 131 S. Ct. 770 (2011); Rompilla v. Horn, 355 F.3d 233 (3d Cir. 2004), rev'd on other grounds sub nom., 545 U.S. 374  (2005); see also Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)), it appears that the Supreme Court of New Jersey entered such affirmance when it expressly narrowed the certification it granted to Petitioner to the issue of whether the PCR counsel was obligated to raise the claims Petitioner desired to litigate, even if the counsel deemed those claims factually unwarranted and/or legally meritless.  Indeed, no statement made by the Supreme Court of New Jersey in State v. Webster, 187 N.J. 254, indicated a decision to decline review as to the issues raised in Petitioner's counseled second PCR petition and addressed by the Appellate Division on merits.  Therefore, those counseled challenges appear duly exhausted for the purposes of this Court's habeas review.  However, this conclusion does not change the fact that some of Petitioner's claims presented in his instant Petition appear nunexhausted.  For instance, Petitioner's claim that his trial counsel violated his rights when his counsel failed to propose a defense of diminished capacity cannot be deemed a "substantive equivalent" of his claim that his counsel violated his rights by failing to object to jury instructions on the issue of self-defense or that his counsel failed to present an imperfect self-defense position.  See Mustaffa v. Ricci, 2011 U.S. Dist. LEXIS 44940 (D.N.J. Apr. 25, 2011) (explaining the difference between the diminished capacity defense and "imperfect self-defense" for the purposes of habeas review, where the litigant – same as Petitioner here – challenged his counsel's choice of action and failure to object to jury instructions), certif. of appealability denied, Mustaffa v. Ricci, U.S.C.A. Index No. 11-2382 (3d Cir.) (order dated July 21, 2011).

this juncture: it merely provides a basis for the <u>Rhines</u> analysis or a reason to allow Petitioner's withdrawal of his unexhausted claims.  However, such measures would be futile in this action: in light of the untimeliness of the Petition.  Therefore, this Court, while disagreeing with the finer points of Respondents' position, is constrained to dismiss the Petition with prejudice for failure to meet the applicable statute of limitations requirements.

      **1.**      **Summary of the Relevant Time Line: Respondents and Petitioner's Versions**

a.      September 18, 1995:  Petitioner is convicted and sentenced.

b.      February 3, 2000:    The New Jersey Supreme Court denied Petitioner certification as to his direct appeal.

c.      May 8, 2000:      Petitioner filed his first PCR application.  Which, in turn, means that Petitioner's first PCR application was filed 94 days after the New Jersey Supreme Court denied Petitioner certification as to his direct appeal.

d.      March 20, 2001:    Petitioner's first PCR application was dismissed for Petitioner's counsel's failure to file a supporting brief.

e.      Disputed Date:     Under Respondents' version of events, Petitioner filed his second PCR application on May 22, 2002; it was a counseled application.  Under Petitioner's version of events, Petitioner initially submitted his second PCR application <u>pro se</u> on June 27, 2001, and the May 22, 2002, filing of counseled PCR application was merely an amendment of the same.

14

f.  July 12, 2006:      The Supreme Court of New Jersey remanded Petitioner's PCR

challenges to the Superior Court of New Jersey, Law Division.

g.  February 11, 2007:  Pursuant to the workings of the remand, Petitioner filed his

amended (effectively, third) PCR application with the Law

Division.

h.  October 8, 2009:    The Supreme Court of New Jersey denied Petitioner certification

as to his amended (effectively, third) PCR application.

i.  September 30, 2010: It is presumed that Petitioner submitted his instant habeas Petition

to his prison officials for mailing to this Court.

## 2.   Statutory Tolling

On April 24, 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act

("AEDPA"), which provides that "[a] 1-year period of limitation shall apply to an application for

a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28

U.S.C. § 2244(d)(1).[11]

### a.   *Respondents' Version of Events*

The limitations period runs from "the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. §

2244(d)(1).  A state-court criminal judgment becomes "final," within the meaning of

---

[11]  For the reasons not entirely clear to this Court, Respondents included in their argument
a discussion of the "grace" period allowed to habeas litigants whose convictions became final
prior to the effective date of the AEDPA.  See Docket Entry No. 6, at 7.  However, the "grace"
period considerations are inapplicable to the case at bar, since Petitioner's conviction in the Law
Division occurred in 1995, that is, prior to the AEDPA coming in force, but his judgement of
conviction became "final" in 2000, i.e., many years after the AEDPA had become the law.

§2244(d)(1), by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); accord Arriaza Gonzalez v. Thaler, 2012 U.S. LEXIS 574 (Jan. 10, 2012); U.S. Sup. Ct. R. 13.

Since, as to his direct appeal, Petitioner was denied certification by the New Jersey Supreme Court on February 3, 2000, Petitioner's AEDPA period of limitations was triggered 90 days later, that is, on May 4, 2000, when Petitioner's time to seek certiorari from the United States Supreme Court expired.  See id.  Respondents correctly calculated that date.  See Docket Entry No. 6, at 8.   Therefore, Petitioner's one-year period began running on May 4, 2000, and – had no events interrupted run – it would have expired on May 3, 2001.  However, an interrupting event did occur.

The statute of limitations under § 2244(d) is subject to two distinct and separate tolling exceptions: statutory and equitable.  See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617-18 (3d Cir. 1998).  Section 2244(d)(2) requires statutory tolling for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). An application is deemed "properly filed" if it was accepted for filing by the addressee court and such acceptance occurred within the time limits prescribed by the governing state law.  See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005); see also Artuz v. Bennett, 531 U.S. 4 (2000).

16

Other than a petition to correct an illegal sentence, New Jersey Court Rule 3:22-12(a)(1) requires a petition for post-conviction relief to be filed within five years of the date the judgment of conviction or sentence sought to be attacked was entered (unless it alleges facts showing that the delay was due to excusable neglect).  See N.J. Ct. R., R. 3:22-12(a)(1).  Here, Respondents seem to argue that Petitioner's first PCR application was not "properly" filed – and, hence, Petitioner's statutory tolling was not triggered at all by that first PCR application – because that first PCR was eventually dismissed by the state court without prejudice, on the grounds of Petitioner's PCR counsel's failure to file a brief in support of that PCR application.  See Docket Entry No. 6, at 8-9.  If the Court deciphered Respondents' position correctly, Respondents err, since Petitioner's first PCR was duly received by the Law Division within the limitation period allowed by the state law.[12]  Therefore, Petitioner's AEDPA period of limitations, which was triggered on May 4, 2000, ran only for four days: until it was statutorily tolled by Petitioner's filing of his first PCR submission on May 8, 2000.  Which, in turn, means that Petitioner's one-year AEDPA period was depleted only by four days, i.e., it went down from 366 days to 362 days,[13] and then it became tolled.

That statutory tolling continued until the date when Petitioner's first PCR application was dismissed, that is, until March 20, 2001, when the Law Division dismissed that PCR application.

_____

[12]  In contrast, Petitioner's attempt to file a PCR application on February 18, 2000, could not trigger any statutory tolling, even if Petitioner is correct in his claim that he attempted such filing, since it is undisputed that Petitioner's submission made, allegedly, on February 18, 2000, never reached the state courts.  Therefore, that submission, even if actually made, was not "properly filed" within the meaning of the AEDPA requirements.

[13]  The year 2000 was a leap year.  See <<http://www.timeanddate.com/calendar/monthly.html?year=2000&month=2&country=1>>.

Which, in turn, means, that the remainder of Petitioner's AEDPA period began to run again on that very day (that is, on March 20, 2001) and expired 362 days later, i.e., on March 17, 2002.

Therefore, Petitioner's filing of his second PCR application on May 22, 2002, could not trigger any statutory tolling, since such filing came *after* expiration of Petitioner's AEDPA.  See See Long v. Wilson, 393 F.3d 390, 394-95 (3d Cir. 2004); Schlueter v. Varner, 384 F.3d 69, 78-79 (3d Cir. 2004).  Correspondingly, under Respondents' version of events, the Petition had been time-barred *by more than eight and a half years* by the time it got filed with this Court.[14]

### b.   *Petitioner's Version of Events*

As detailed supra, Petitioner's time-line of relevant events differs from that of Respondents in one key respect: Petitioner maintains that his second PCR application was initially filed pro se, on May 27, 2001, and that the May 22, 2002, counseled filing represented merely an amendment of the same.  See Docket Entry No. 1, at 9; Docket Entry No. 13, at 3.

Even though Petitioner did not produce a copy of such second PCR application filed initially pro se, and the state court expressly used May 22, 2002, as the date of Petitioner's filing of his second PCR application, this Court finds that abundance of caution requires an alternative calculation Petitioner's AEDPA period: in accordance with Petitioner's version of events.

As noted supra, Petitioner's AEDPA period of limitations, triggered on May 4, 2000, ran only for four days until it was statutorily tolled, for the first time, by Petitioner's filing of his first PCR submission on May 8, 2000 (hence leaving Petitioner with 362 days to file the Petition after his statutory tolling ends).  That first statutory tolling continued until the date when Petitioner's

_____

[14]  Under Respondents' calculation, the Petition had been time barred for three years or so by the time when Petitioner filed it with this Court.  See Docket Entry No. 6, at 10.

first PCR application was dismissed, that is, until March 20, 2001, and so this remaining 362-day period began to run.

According to Petitioner, that run was statutorily tolled, for the second time, on June 27, 2001, that is, ninety-nine days after March 20, 2001, when Petitioner allegedly filed the initial, pro se version of his second PCR application. See Docket Entry No. 13, at 3. Which, in turn, means that Petitioner used 99 days of his remaining 362 days of his AEDPA period, and had 263 days of that period left to file the Petition at bar after his second statutory tolling ended, i.e., after all state proceedings associated with his second PCR application (and, effectively, with his third PCR application) were completed.

The state proceedings associated with his second PCR application (and, effectively, with his third PCR application) completed on October 8, 2009, when the Supreme Court of New denied Petitioner certification as to his third PCR application. Since, unlike in calculation of the period associated with determination of "finality" of judgment of conviction (ensuing from direct appellate proceedings), no 90-day period to seek certiorari from the Supreme Court of the United States is added to calculation of statutory tolling period, see Lawrence v. Florida, 549 U.S. 327 (2007); Stokes v. Dist. Attorney of County of Philadelphia, 247 F.3d 539, 542 (3d Cir. 2001), Petitioner's AEDPA-based period of limitations was re-triggered on October 8, 2009, and his remaining 263 days began to run. Which, in turn, means that Petitioner's AEDPA-based period of limitations expired on June 27, 2010. From that date on, Petitioner's instant habeas Petition became time barred under Petitioner's version of events.

Therefore, if this Court were to adopt Petitioner's time-line, his Petition – being presumed submitted on September 30, 2009, – is untimely by more than two months. Since,

except in the circumstances warranting equitable tolling, the AEDPA statute of limitations is strictly applied, the Petition is just as untimely being filed more than two months after its deadline (as it appears to be under Petitioner's version of events) as it is untimely being filed eight and a half years after that deadline (as it appears to be under Respondents' version of events). See, e.g., Lookingbill v. Cockrell, 293 F.3d 256, 264-65 (5th Cir. 2002) ("In past cases, we have focused on the reasons for missing the deadline rather than on the magnitude of the tardiness. At the margins, all statutes of limitations and filing deadlines appear arbitrary. AEDPA relies on precise filing deadlines to trigger specific accrual and tolling provisions. Adjusting the deadlines by only a few days in both state and federal courts would make navigating AEDPA's timetable impossible. Such laxity would reduce predictability and would prevent us from treating the similarly situated equally. We consistently have denied tolling even where the petition was only a few days late"); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (dismissing the petition where petitioner missed deadline by "only a few days"), cert. denied, 529 U.S. 1099 (2000). Simply put, no matter how this Court slices it, the Petition failed to meet the AEDPA statute of limitations requirement and, unless it qualifies for equitable tolling, it is subject to dismissal with prejudice.

## 2.    Equitable Tolling

As noted supra, the AEDPA statute of limitations is also subject to equitable tolling. See Holland v. Florida, 130 S. Ct. 2549 (2010), Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998). "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (a) that he has been pursuing his rights diligently, and (b) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418; see also Holland, 130 S. Ct. 2549. Thus,

20

a litigant's excusable neglect cannot trigger equitable tolling.  See Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).  Rather, equitable tolling could be triggered only when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims."  LaCava v. Kyler, 398 F.3d 271, 275-276 (3d Cir. 2005); see also Holland, 130 S. Ct. at 2562 (relying on Pace, 544 U.S. at 418).  Moreover, even where extraordinary circumstances do exist, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."  Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

Since a "garden variety claim of excusable neglect" by a petitioner's attorney is not an extraordinary circumstance warranting equitable tolling, Holland, 130 S. Ct. at 2564 (citations omitted), extraordinary circumstances have been found only where: (a) the respondent has actively misled the plaintiff, (b) the petitioner has in some extraordinary way been prevented from asserting his rights, (c) the petitioner has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (d) the court itself has misled a party regarding the steps that the party needs to take to preserve a claim.  See Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).

21

Therefore, extraordinary circumstance might result from such event as an attorney's abandonment of his/her client, but that abandonment *must occur in or directly affect* the very action with regard to which equitable tolling is sought.  See Nara v. Frank, 264 F.3d 310 (3d Cir. 2001) (ordering evidentiary hearing as to equitable tolling where petitioner facing the death penalty was effectively abandoned by his lawyer), overruled on other grounds, Carey v. Saffold, 536 U.S. 214 (2002); see also Holland, 130 S. Ct. at 2565 (where attorney "failed to communicate with his client over a period of years, despite various pleas from [client, and] the failures seriously prejudiced a client who thereby lost what was likely his single opportunity for federal habeas review of the lawfulness of . . . his death sentence," such gross misconduct might have constituted extraordinary circumstances); accord Seitzinger v. Reading Hosp. and Med. Ctr., 165 F. 3d 236, 237 (3d Cir. 1999) (equitable tolling was appropriate in Title VII case where "a diligent client persistently questioned the lawyer as to whether he had filed the complaint in time, and he affirmatively misrepresented to her that he had").   In addition, an attorney's neglect may qualify as an "extraordinary circumstance" only if such neglect is shown to be "egregious." See Holland, 130 S. Ct. at 2563 ("[A]t least sometimes, professional misconduct . . . could . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling"); Lawrence v. Florida, 549 U.S. 327 (holding that "counsel's mistake in miscalculating the limitations period" is not extraordinary circumstance warranting equitable tolling because, "[i]f credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline"); Johnson v. Hendricks, 314 F.3d 159, 160 (3d Cir. 2002) (an attorney's mistake in determining the petition's due date did not constitute extraordinary circumstances); Smith v. Gillis, 2004 WL 573957, at *3 (E.D. Pa. Mar. 4, 2004) (an attorney's

22

failure to timely notify petitioner of the state court's decision affirming the dismissal of his petition was not an extraordinary circumstance).

For instance, in Holland, the Supreme Court found that the conduct of a federal habeas petitioner's attorney "may well be an 'extraordinary' instance in which petitioner's attorney's conduct constituted far more than 'garden variety' or 'excusable neglect.'" Id. at 2564.  There, the attorney:

> failed to file [the petitioner's] federal petition on time despite [the petitioner's] many letters that repeatedly emphasized the importance of his doing so. [The attorney] apparently did not do the research necessary to find out the proper filing date, despite [the petitioner's] letters that went so far as to identify the applicable legal rules. [The attorney also] failed to inform [the petitioner] in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite [the petitioner's] many pleas for that information.  And [the attorney] failed to communicate with [the petitioner] over a period of years, despite various pleas from [the petitioner] that [the attorney] respond to his letters.

Id.

Despite attorney's blatant disregard for the petitioner's interests, the petitioner's repeated efforts to have new counsel appointed – including contacting the state courts, their clerks, and the Florida Bar Association – were denied.  See id. at 2565.  When the petitioner ultimately discovered his AEDPA year had expired because of his attorney's abandonment, he prepared his habeas petition pro se and promptly filed it with the district court on the very day he learned that his AEDPA filing period had expired.   See id. at 2553-56.  On the basis of these facts, the Supreme Court found that further factual consideration was needed to determine: (a) whether the counsel's failure to timely file the habeas petition, to correctly determine the filing deadline, and to respond to the petitioner's many requests for information amounted to extraordinary circumstances within the meaning of the equitable tolling doctrine; and (b) whether the

23

petitioner's actions showed due diligence as to his efforts to have his habeas petition timely filed. See, generally, Holland v. Florida, 130 S. Ct. 2549.

The Supreme Court addressed a related issue in its recent decision, Maples v. Thomas, 2012 U.S. LEXIS 905 (entered January 18, 2012).  In Maples, the petitioner's PCR application was prepared by two New York attorneys associated with a certain New York-based law firm. See id. at *9.  While that PCR application was pending before the trial court, the petitioner's New York attorneys left their firm for other employ without notifying either the petitioner or the trial court about their inability to continue the petitioner's representation.   See id.  When the petitioner's PCR application was denied, notices of the same were sent to the attorneys at their former firm's address and returned to the trial court undelivered and unopened.  See id.  The trial court clerk attempted no further mailing, hence leaving the petitioner without notice that his time to appeal was triggered.  See id.  Having no such notice, the petitioner procedurally defaulted on his PCR appeal, and that procedural default barred him from raising his claims in his federal habeas petition.  See id.

Performing an analysis substantively analogous to that conducted in Holland, the Supreme Court found that the petitioner showed "cause" for the purposes of overcoming the procedural default bar on the grounds of attorney abandonment, which took away not only the petitioner's ability to timely raise his appellate PCR challenges but also the petitioner's ability to raise his federal habeas claims.  See generally, Maples v. Thomas, 2012 U.S. LEXIS 905; compare Schlueter v. Varner, 384 F. 3d 69, 77-78 (3d Cir. 2004) (where attorney had allegedly represented that he would file a PCR application, but the prisoner had not taken "affirmative steps to ensure the timely filing" of such PCR application, equitable tolling was unwarranted).

a.     *The Parties' Positions*

Respondents' answer did not address the specifics of the case at bar; rather, Respondents merely recited the basic tenets of the equitable tolling doctrine, see Docket Entry No. 6, at 10, and then stated their opinion that "[t]here is no basis for equitable tolling in this case. There is no evidence of some impediment or 'extraordinary circumstance' that prevented petitioner from pursuing his collateral remedies in state court in a more diligent fashion." Id. at 10-11.

In contrast, Petitioner's traverse was dedicated, in its entirety, to the issue of timeliness and, albeit in layperson's terms, asserted that his Petition should have been entitled to equitable tolling. See Docket Entry No. 13. Pointing at the events that, allegedly, took place during the pendency of his first PCR application (i.e., the application which, eventually, was dismissed for Petitioner's PCR counsel's failure to file a supporting brief) Petitioner asserted that:

(a)     Petitioner wrote to the trial court in September 2000, inquiring about the status of his first PCR application and asking whether it was referred to the Office of the Public Defender;

(b)     in November 2000, Petitioner wrote to the public defender who was appointed for the purposes of prosecuting Petitioner's first PCR application and inquired about the status of his first PCR application;

(c)     after having phone conversations with that public defender, Petitioner wrote to that public defender in January 2001, complaining about that public defender's failure to discuss with Petitioner the strengths and weaknesses of Petitioner's first PCR application (which, by then, was already filed);

(d)     also in January 2001, Petitioner wrote to the Deputy Public Defender and his trial court complaining about that public defender; and

25

(e)     Petitioner, allegedly, also "diligently sought to have [that public defender] to

communicate with him and assist him" until March 2001.

See id. at 2-3.

In light of the foregoing, Petitioner seeks grant of equitable tolling to his Petition at bar.

However, even if this Court were to hypothesize that the conduct of the public defender

appointed to represent Petitioner for the purposes of Petitioner's first PCR amounted, somehow,

to abandonment, *that* abandonment – no matter how egregious it might have been – cannot be

stitched to Petitioner's failure to file his habeas application in *the instant matter*.  Indeed, unlike

in Holland, the public defender appointed to represent Petitioner for the purposes of Petitioner's

first PCR did *not* represent Petitioner in the instant action; in fact, that public defender neither

had nor has any connection with the instant action.

Moreover, unlike in Holland, Petitioner was not misled by anyone as to the fact that his

federal habeas petition was filed.  And, unlike the litigant in Holland, Petitioner knew about

every ruling entered by the state courts as to his direct appeal and as to his multiple PCR

applications; he also knew that – and when – the Supreme Court of New Jersey denied him

certification as to the latest round of his PCR challenges.  And, unlike in Holland, the alleged

lack of communications between Petitioner and his first PCR attorney occurred almost a decade

prior to Petitioner's filing of the Petition at bar and, thus, could not possibly affect Petitioner's

federal habeas filing.[15]

---

[15]  The Supreme Court observed that, in the event that a state prisoner is "reasonably
confused" as to whether his petition would be timely, that prisoner could file a protective § 2254
petition.  See Pace, 544 U.S. at 416-417.  "A prisoner . . . might avoid [dismissal of his federal
habeas petition on the grounds of untimeliness] by filing a 'protective' petition in federal court."
(continued...)

Furthermore, Petitioner's circumstances are virtually opposite to those presented in

Maples.  Unlike in Maples, not a single challenge raised by Petitioner in his multiple PCR

applications was dismissed on procedural grounds: all these challenges were resolved on merits.

Therefore, the shortcomings, if any, plaguing the performance rendered by the public defender

appointed to represent Petitioner for the purposes of Petitioner's first PCR in no way prevented

or barred Petitioner from raising any claims before this Court.  A fortiori, these shortcomings

could not prevent Petitioner from raising his instant habeas challenges in a timely manner.

In sum, Petitioner had almost a decade, from the date of his conviction becoming final, to

reflect on his federal habeas claims and to prepare them.  He had years to determine his AEDPA

period of limitations and the date of § 2254 filing deadline.  He, however, chose to sit on his

rights and, having missed his limitations period, now took the course of blaming the performance

of his nearly-decade-ago PCR counsel for Petitioner's current laxness and/or tardiness.  Granting

Petitioner equitable tolling under such circumstances would be contrary to both the letter and

spirit of the equitable tolling doctrine.  Therefore, while mindful of the frustration Petitioner is

likely experiencing now, this Court is constrained to dismiss the Petition as facially untimely.

### III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of

appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §

---

[15](...continued)

Id. (citing Rhines v. Weber, 544 U.S. at 278). .Here, Petitioner's traverse is replete with
statements showing that Petitioner was systemically filing such "protective" submissions with the
state courts in order to ensure timeliness of his state applications.  See, e.g., Docket Entry No. 13,
at 3 ("[P]etitioner[,] upon learning of this situation, immediatekly filed his PCR petition pro se).
Therefore, it is apparent that Petitioner could file a timely "protective" habeas petition with this
Court, that is, had he wanted to do so.

2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find it debatable that this Court was correct in its finding that the Petition is untimely and Petitioner failed to assert a valid basis for equitable tolling.  Accordingly, no certificate of appealability will issue.

## IV.  CONCLUSION

For the foregoing reasons, the Petition will be dismissed with prejudice.  No certificate of appealability will issue.  An appropriate Order accompanies this Opinion.

      *s/Dickinson R. Debevoise*
      **Dickinson R. Debevoise,**
      **United States District Judge**

Dated: January 30, 2012